# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROLLIE LUNSFORD, and ROGER LUNSFORD, ) ) ) **Plaintiffs,** ) ) v. ) ) THE BOARD OF COUNTY ) COMMISSIONERS of the COUNTY OF ) ROGERS, STATE OF OKLAHOMA, and ) MIKE HELM, in his individual capacity, ) ) **Defendants.** ) | Case No. 05-CV-0218-CVE-FHM |

## OPINION AND ORDER

Now before the Court are defendants' Motion for Summary Judgment (Dkt. # 27), defendants' Motion in Limine (Dkt. # 33), and plaintiffs' Motion in Limine (Dkt. # 34). Defendants, the Board of County Commissioners of the County of Rogers, Oklahoma ("Board") and Mike Helm ("Helm"), move for summary judgment on plaintiffs' 42 U.S.C. § 1983 claims. Plaintiffs allege that defendants terminated their employment based on their political campaign activities in violation of their freedom of association and freedom of speech. Defendants argue that Helm terminated plaintiffs based on conduct other than their involvement in the political campaign; thus, their terminations were not a violation of the First and Fourteenth Amendments. Defendants also argue that, even if plaintiffs' terminations were unconstitutional, Helm is entitled to qualified immunity. In their motions in limine, defendants and plaintiffs each seek to exclude certain evidence.

**I.**

Rogers County, Oklahoma is divided into three districts, each with an independently elected County Commissioner. Each district has a maintenance yard, referred to as the "Barn." The county employees in each district are responsible for all maintenance of the roads in the district. Dkt. # 27, Ex. A, Rollie Lunsford Deposition at 10, 14.

Plaintiff Roger Lunsford ("Roger") was hired at the District Two Barn in 1970 by the former Rogers County Commissioner, Glenn Sweet ("Sweet"). Sweet appointed Roger to the Assistant Road Foreman position in approximately 1991. Dkt. # 27, Ex. B, Roger Lunsford Deposition at 6, 8-10. Sweet hired Plaintiff Rollie Lunsford ("Rollie") in 1997 to work at the District Two Barn. Dkt. # 27, Ex. A, Rollie Lunsford Deposition at 6, 9-10, 13, 19. Roger and Rollie are father and son, respectively. In 2003, Rollie was appointed to the Road Foreman position after then-Road Foreman Justin Barnes ("Barnes") wrecked a county truck. Id. As Road Foreman, Rollie supervised and gave job assignments to county employees building roads. As Assistant Road Foreman, Roger filled in for Rollie in his absence. Rollie supervised approximately twenty-two (22) employees, including dump truck drivers, equipment operators, and mechanics. Dkt. # 31, Ex. 12, 14, 15. Road Foreman and Assistant Road Foreman were the top two positions at District Two Barn.

From 2001 through 2004, Roger and Rollie worked under then-Commissioner Bill Graves ("Graves"), a Democrat. In the Summer of 2004, Graves announced that he was running for re-election. Rollie agreed to be Graves' campaign manager and engaged in political campaign activities such as posting political signs and handing out information from door-to-door. Dkt. # 31, Ex. 1, Rollie Lunsford Deposition at 39, 48, 49. Roger also contributed to the political campaign by constructing over one hundred (100) campaign signs. Dkt. # 31, Ex. 12, Roger Lunsford

Deposition at 28. According to Roger and Rollie, they were the most involved District Two Barn employees in the Graves campaign.

Before the November 2004 election, both Rollie and Roger heard rumors that Helm, a Republican who ran against Graves for the position of County Commissioner, would fire them if he won the election. Dkt. # 31, Ex. 1, Rollie Lunsford Deposition at 22. Due to these rumors, Roger approached Helm on election day, introduced himself, and said to Helm, "I just want to meet the man who is going to fire me." Helm allegedly responded, "I ain't firing nobody. There's laws against that." Dkt. # 31, Ex. 12, Roger Lunsford Deposition at 24-25.

Graves lost the general election to Helm. Helm was inaugurated on January 3, 2005. On the same day that he took office, Helm discharged plaintiffs. In their place, Helm appointed Allen Carter as Road Foreman. Carter then named Dusty Ulrey as Assistant Foreman. Both Ulrey and Carter are Democrats. Indeed, Carter ran as a Democrat against Graves in the 2004 primary election. Dkt. # 27, Ex. H, Carter Deposition at 10.

Helm testified that Roger and Rollie's political conduct, including their campaigning and association with Graves, was not a factor in the decision to terminate their employment. Dkt. # 27, Ex. E, Helm Deposition at 4. Rather, Helm points to several other incidents that influenced his decision to fire plaintiffs. Plaintiffs dispute that the incidents, if they occurred, influenced Helm's decision to terminate them. For example, Helm claims that he fired plaintiffs because of Ronnie's involvement with the Barnes' wreck. <u>See</u> Dkt. # 27, Ex. A, Graves Deposition at 30-31. By contrast, Ronnie claims that he did not act inappropriately after the Barnes' wreck and that, regardless of his conduct, Helm was not informed of the situation prior to firing them. Dkt. # 31, Ex. 13, Sweet Deposition at 16-18. Additionally, Helm claims that he terminated plaintiffs' employment

because of their habit of drinking alcoholic beverages on county property. Dkt. # 27, ¶ 7. Plaintiffs allege that Helm has mischaracterized this conduct. Dkt. # 31, ¶ 7. Helm also claims that he fired plaintiffs because they attacked and threatened his step-father, but plaintiffs argue that they were not present at the time of the alleged attack. Dkt. # 31, ¶¶ 15, 18; Dkt. # 31, Ex. 8, Sparks Deposition at 7-9, 11.

## II.

Plaintiffs contend that defendants fired them for their involvement in a political campaign in violation of their freedom of association and freedom of speech. Defendants move for summary judgement on both the freedom of association and freedom of speech claims on the grounds that (1) plaintiffs were fired for reasons wholly unrelated to their political activities, and (2) even if plaintiffs' terminations were unconstitutional, Helm is entitled to qualified immunity.

## A.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**B.**

Plaintiffs contend that defendants violated two types of First Amendment rights: political association and free speech. Where a government employer takes adverse action on account of an employee's political association and/or political beliefs, the Court applies the test developed in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). Where a government employer takes adverse action based on an employee's exercise of his right to free speech, the Court applies the test from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983).

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1451 (10th Cir. 1997); Jantzen v. Hawkins, 188 F.3d 1247, 1251 (10th Cir. 1999). To defeat defendants' motion for summary judgment on the political association claim, plaintiffs "are required to establish a genuine dispute of fact that (1) political

affiliation and/or beliefs were 'substantial' or 'motivating' factors behind their dismissals; and (2) [plaintiffs'] respective employment positions did not require political allegiance." Jantzen, 188 F.3d at 1251. In Jantzen, the court found that there was no genuine issue of material fact as to whether political affiliation was a substantial or motivating factor in firing one of the plaintiff-appellants where that particular plaintiff-appellant chose to run against his boss in a political race. The court reasoned that "the right to political affiliation does not encompass the mere right to affiliate with oneself"; thus, it affirmed the district court's grant of summary judgment for the defendant with respect to that particular plaintiff-appellant. Id. at 1252. With respect to the other plaintiff-appellants who supported their co-worker's candidacy for political office instead of supporting their boss, however, the court found that there was a genuine issue of material fact as to whether political affiliation and/or beliefs were a substantial or motivating factor in those appellants' terminations. Id. "[O]fficial pressure upon employees to work for political candidates not of the worker's own choice constitutes a coercion of belief in violation of fundamental constitutional rights." Connick, 461 U.S. at 149; see also Smith v. Sushka, 117 F.3d 965, 970 n.6 (6th Cir. 1997) ("[P]olitical affiliation is not limited to membership in a political party and includes commonality of political purpose and support of political candidacy."). Here, if plaintiffs were fired based on their political support for Graves (a fact that is disputed, as discussed in the paragraph below), then this would mirror the situation of the plaintiff-appellants in Jantzen for whom the court found a jury trial was appropriate.

Here, the fundamental dispute is whether defendants fired plaintiffs as a result of their political activities or for reasons wholly independent of those activities. Plaintiffs allege that Helm fired them on his first day in office because they had been actively involved in supporting Graves,

against whom Helm ran for commissioner. Helm adamantly denies that plaintiffs' role in Graves's candidacy affected his decision to terminate them. According to Helm, he fired plaintiffs based on the attempted cover-up of a work accident in 2003, Ronnie's alleged physical assault on Helm's step-father, Ronnie's allegedly obscene remarks to Helm and his family, and the plaintiffs' threats to burn down Helm's house. Virtually all of Helm's purported reasons for firing plaintiffs are in dispute. Moreover, even if these alleged bad acts are true, there is a dispute as to whether Helm had knowledge of these act before he fired plaintiffs. Thus, the core issue in this case – whether plaintiffs were fired based on their political campaign activities – is in dispute. Moreover, whether plaintiffs' involvement in Graves' political candidacy was a substantial or motivating factor behind their dismissal depends on Helm's state of mind at the time he fired them. Thus, Helm's credibility plays a large part in this inquiry. Where factual disputes require credibility determinations, summary judgment is inappropriate. Nat. Aviation Underwriters, Inc. v. Altus Flying Serv., Inc., 555 F.2d 778, 784 (10th Cir. 1977) ("[I]t is particularly wrong to base a summary judgment on the deposition of an interested party on facts . . . known only to him in a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony."). In sum, there is a genuine issue of material fact as to whether political affiliation and/or beliefs were a substantial or motivating factor in plaintiffs' terminations.

In addition, there is a genuine issue of material fact as to whether plaintiffs' respective employment positions required political allegiance. To determine whether political loyalty is an appropriate requirement, the Court must analyze "the nature of the employee's duties and responsibilities." Dickeson v. Quarberg, 844 F.2d 1435, 1442 (10th Cir. 1988). The defendants "bear the burden of proof on whether political association was an appropriate requirement for the

effective performance of the public officer involved." <u>Jantzen</u>, 188 F.3d at 1253. In close cases, doubt should be resolved in favor of the public employees who were terminated. <u>Dickeson</u>, 844 F.2d at 1442. In <u>Jantzen</u>, the court held that there was a genuine issue of material fact as to whether plaintiff-appellants, as jailers and deputy sheriffs, could effectively perform their jobs without being politically loyal to their sheriff-boss. 188 F.3d at 1253. It determined that, for summary judgment purposes, the actual duties and inherent powers of a jailer and deputy sheriff did not necessarily require political loyalty to the sheriff because none of the duties related to any partisan political interests. <u>Id.</u> at 1254. Here, even more so than in <u>Jatzen</u>, the nature of plaintiffs' duties and responsibilities – ensuring proper road maintenance in their district – suggests that political differences with Helm would not threaten their ability to perform effectively their job. Just as there is "no compellingly politically loyal way to arrest a thief, no partisan way to serve summons," there is no political or partisan way to fix roads. <u>Id.</u> at 1255. Thus, at minimum, plaintiffs have shown that there is a genuine issue of material fact regarding the need for political allegiance in their employment positions. Given that there are genuine issues of material fact concerning both whether political affiliation and/or beliefs were substantial or motivating factors behind plaintiffs' dismissals and whether plaintiffs' respective employment positions required political allegiance, defendants are not entitled to summary judgment on plaintiffs' freedom of association claim.

When a public employer allegedly retaliates against an employee for exercising his constitutionally protected right to free speech, the Court analyzes the claim under the four-step analysis developed in <u>Pickering</u> and <u>Connick</u>. First, the Court determines whether the public employee's speech touches on a matter of public concern. <u>Connick</u>, 461 U.S. at 146-57. Second, if the employee spoke as a citizen on a matter of public concern, then the Court must balance "the

8

interests of the [employee], as a citizen, in commenting upon matters of public concern" against the State's interest "in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.  Third, if the balance tips in favor of the employee, then the employee must show that the speech was a "substantial factor or a motivating factor in the detrimental employment decision." Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977); Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996).  Finally, if the plaintiff makes such a showing, then the burden shifts to the defendant to show "by a preponderance of the evidence" it would have reached the same employment decision in the absence of the protected activity. Cragg v. City of Osawatomie, Kansas, 143 F.3d 1343, 1346 (10th Cir. 1998); Gardetto, 100 F.3d at 811. "The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. The second two steps concern causation and involve questions of fact." Dill v. City of Edmond, Oklahoma, 155 F.3d 1193, 1202 (1998); Gardetto; 100 F.3d at 811.

In Waters v. Churchill, 511 U.S. 661, 681 (1994), the Supreme Court emphasized that the Pickering/Connick test "is to be applied to the speech for which [plaintiff-employee] was fired." There, the Court held that the district court erred in granting summary judgment to the employer because, although the employer would have been justified in firing the plaintiff for statements it claims prompted it to terminate plaintiff, "there remains the question whether [plaintiff] was actually fired because of those statements, or because of something else." Id.  According to the Court, there was a jury question as to the real reason for the plaintiff's termination.  If the jury found that the plaintiff was fired for statements other than those which the employer claimed, "then the court will have to determine whether those statements were protected speech, a different matter than the one before us now." Id. at 682.  Here, as discussed above, there is a jury issue concerning the

9

real reason for plaintiffs' termination. Thus, the Court need not even turn to the Pickering test at this juncture since the fundamental question of Helm's reason for terminating plaintiffs is in dispute. Only if the factfinder determines that the reason for termination was plaintiffs' speech in the form of their political campaign involvement must the Pickering test be applied. The Court determines that there is a genuine issue of material fact concerning the reason for plaintiffs' termination; thus, defendants are not entitled to summary judgment on plaintiffs' free speech claim.

## C.

Defendants argue that, even if they are not entitled to summary judgment on plaintiffs' freedom of association and freedom of speech claims, plaintiffs' claims against Helm are barred by the doctrine of qualified immunity. "To successfully resist a motion for summary judgment based on qualified immunity, [plaintiffs] must allege sufficient facts to demonstrate that [their] constitutional rights were violated and demonstrate that those rights were clearly established" at the time Helm terminated plaintiffs. Bass v. Richards, 308 F.3d 1081, 1087 (10th Cir. 2002).

Here, plaintiffs have alleged sufficient facts to demonstrate that their constitutional rights were violated. Plaintiffs provide evidence, though not conclusive, that Helm fired them based on their active involvement in Graves' political campaign against Helm. If this was, in fact, the reason for plaintiffs' terminations, then this would constitute a violation of their freedom of association and freedom of speech. With respect to freedom of association, as addressed above, plaintiffs have raised a genuine issue of material fact that their involvement in the political campaign was a substantial or motivating factor in their termination and that their job was not one that required political allegiance.

With respect to plaintiffs' freedom of speech claim, since the Court did not previously address whether firing one for his involvement in a political campaign constitutes a free speech violation, it must do so in this context. The first prong of the Pickering test, articulated above, requires the Court to determine whether the employee's speech touches on a matter of public concern. Speech concerning public elections, such as the speech involved here, is unquestionably a matter of public concern. Cragg, 143 F.3d at 1346 (holding that placing a political ad on cable television and posting a sign in his front year is the "core of protected speech" and stating that it "would be hard pressed to classify the election of a city council member as anything other than a matter of great public concern."). Under the second part of the Pickering test, the Court must balance the interests of the employee in commenting upon matters of public interest against the State's interest in promoting the efficiency of public services. "Where close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." Connick, 461 U.S. at 151-52. However, as is the case here, "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." Id. at 152. Here, the defendants' interest in maintaining a cohesive work environment is slight given that the plaintiffs' actions in the political campaign occurred before Helm took office and did not disrupt the work of other employees. Thus, plaintiffs' free speech interest outweighs the defendants' interests. Under the third prong, as is the case in their freedom of association claim, plaintiffs have raised a genuine issue of material fact that the speech was a substantial factor in the detrimental employment decision. Finally, defendants have failed to show, by a preponderance of the evidence, that they would have reached the same employment decision in the absence of the

protected activity. Therefore, plaintiffs have raised a genuine issue of material fact that their constitutional right to free speech was violated.

To overcome defendants' motion for summary judgment on the ground of qualified immunity, plaintiffs must also show that the rights involved were clearly established at the time of their termination. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Jantzen, 188 F.3d at 1259. While the precise action in question need not have been previously declared unlawful, the unlawfulness of the act must be apparent in light of pre-existing law. Id. This is generally shown when there are Supreme Court or Tenth Circuit cases on point or when the weight of authority from other courts clearly supports plaintiffs' interpretation of the law. Greene v. Barrett, 174 F.3d 1136, 1142 (10th Cir. 1999).

Here, the Jantzen case clearly indicates that firing an employee for his support of a political campaign is a violation of freedom of association. The Cragg case clearly and unambiguously supports plaintiffs' argument that firing one for his involvement in a political campaign constitutes a violation of freedom of speech. These principles were well established at the time Helm fired plaintiffs. Therefore, Helm is not entitled to qualified immunity.

### III.

In their motion in limine (Dkt. # 33), defendants seek the to prohibit plaintiffs, their witnesses, or counsel from referring to, introducing, or attempting to introduce the following evidence and/or testimony: (1) any statement or suggestion that plaintiffs were terminated in return for Sweet's campaign support for Helm; (2) requests for production of items that are not identified in the pre-trial order; (3) reference to or mention of defendants' failure to call any witness; (4) any

reference to the fact that defendants filed this motion in limine; and (5) any reference to any insurance policy of defendants. Plaintiffs agree not to refer to defendants' motion in limine during the course of the trial, not to refer to any insurance policy of defendants, and not to produce an item or witness during trial that is not on the pre-trial order. Therefore, the Court grants defendants' motion with respect to items (2), (3), (4), and (5).

Defendants seek to exclude any statement or suggestion that plaintiffs were terminated in return for Sweet's campaign support for Helm because such statements constitute inadmissible hearsay. Defendants point to a particular line of questioning in Roger's deposition where Roger testified that various persons told him that Helm was going to fire him. See Dkt. # 27, Ex. B, Roger Lunsford Deposition at 7, 10. Plaintiffs concede that the isolated testimony from Roger's deposition constitutes hearsay; however, they correctly point out that not all statements or suggestions that plaintiffs were terminated in return for Sweet's campaign support for Helm constitute inadmissible hearsay. On the contrary, plaintiffs will introduce testimony from Graves and Sweet, as well as circumstantial evidence, to demonstrate that Sweet had a personal vendetta against Graves. This evidence is relevant because Sweet supported Helm in his campaign against Graves, and plaintiffs allege that the Sweet/Helm relationship contributed to Helm's decision to fire plaintiffs. In addition to being relevant, this evidence is not hearsay. Therefore, defendants' motion to exclude all suggestions that plaintiffs were terminated in return for Sweet's campaign support for Helm is denied.

**IV.**

In their motion in limine (Dkt. # 34), plaintiffs seek to exclude facts relating to an alcohol-related arrest and misdemeanor charge involving Rollie and Clifton White that occurred after Rollie's termination. Plaintiffs argue that this evidence is irrelevant, unfairly prejudicial and constitutes improper character evidence of specific instances of conduct. Defendants argue that, since Rollie seeks front pay in lieu of reinstatement, Rollie places his post-termination conduct at issue. See Dkt. # 2 at 5. They argue that, if Rollie would have been terminated for the March 2005 alcohol-related arrest, then it would be inequitable to provide him with front pay damages beyond March 2005.

The Tenth Circuit has addressed the question of whether evidence of misconduct that occurs after the employee has been terminated is relevant in determining whether front pay is an appropriate remedy. Medlock v. Ortho Biotech, Inc., 164 F.3d 545 (10th Cir. 1999). In Medlock, the Tenth Circuit determined that it "could not foreclose the possibility that in appropriate circumstances the logic of McKennon[1] may permit certain limitations on relief based on post-termination conduct." 164 F.3d at 555. But the court concluded that, in the Medlock case itself, evidence of post-termination conduct was not relevant because the misconduct in question was a direct result of retaliatory termination. Id. The Eighth Circuit agreed with the Tenth Circuit that it could not establish a bright-line rule and foreclose the possibility that post-termination conduct may limit the remedial relief available to plaintiffs. Sellers v. Mineta, 358 F.3d 1058, 1063 (8th Cir. 2004). The

---

[1] In McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 356, 360-61 (1995), the Supreme Court held that after-acquired evidence of employee on-the-job misconduct that would have resulted in the employee's discharge may be relevant to the employee's remedy.

14

Eight Circuit gave the following example of when post-termination conduct would be relevant to the issue of front pay:

> Let us suppose that after the FAA had terminated [plaintiff], and before the district court granted her equitable relief, [plaintiff] had been convicted of some crime wholly unrelated to her former position with the FAA and was incarcerated such that reinstatement was now an impossibility. Simple common sense tells us that it would be inequitable to award her front pay in lieu of reinstatement where she had rendered herself actually unable to be reinstated.

Id. Here, Rollie was arrested and incarcerated for public intoxication on March 16, 2005. While it does not appear from the summary judgment record that Rollie is still incarcerated for this misconduct, this arrest might have rendered him unfit for employment as the Rogers County Road Foreman, if he had not been terminated before the March 2005 misconduct. Unlike the Medlock case, there is no evidence that Rollie's misconduct was a direct result of the alleged retaliatory termination. Therefore, the Court determines that evidence concerning Rollie's arrest and incarceration on March 16, 2005 is relevant, but only to the issue of front pay.

Front pay is an equitable remedy; thus, the issue of whether to award front pay is for the Court, not the jury. Ballard v. Muskogee Reg'l Med. Ctr., 238 F.3d 1250 1253 (10th Cir. 2001) ("An award of front pay for claims under § 1983 is an equitable remedy; thus, the district court has discretion to decide whether such an award is appropriate."); Whittington v. Nordam Group, Inc., 429 F.3d 986, 1000 (10th Cir. 2005) ("Front pay is an equitable remedy awarded by the court; the amount, if any, is set in the court's discretion."). Since the Court, not the jury, determines whether front pay is an appropriate remedy, the March 15, 2006 incident is irrelevant for jury purposes. Thus, the Court determines that this incident, and other like incidents, shall be excluded during the jury trial. Once the jury has rendered a verdict, the Court will take into account the March 15, 2006

arrest and incarceration in its determination whether to award front pay, if the case reaches that stage. Therefore, the plaintiffs' motion in limine is granted in part and denied in part.

**V.**

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Dkt. # 27) is **denied**, defendants' Motion in Limine (Dkt. # 33) is **granted in part and denied in part**, and plaintiffs' Motion in Limine (Dkt. # 34) is **granted in part and denied in part**.

**DATED** this 18th day of September, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT